UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOBBY GRUBBS    Plaintiff(s) <br><br> vs. <br><br> STEVEN GRIMALDI Defendant(s) <br> et al | ) ) ) ) ) ) ) | INMATE <br> CIVIL RIGHTS AMENDED <br> COMPLAINT PURSUANT <br> PURSUANT TO <br> 42 U.S.C. § 1983 <br><br> Case No. 9: ___ CV ___ |

Plaintiff(s) demand(s) a trial by: ☑ JURY ☐ COURT (Select **only** one).

Plaintiff(s) in the above-captioned action, allege(s) as follows:

### JURISDICTION

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

### PARTIES

2. Plaintiff: BOBBY GRUBBS 09A5025

   Address: Green Haven Correctional Facility
   P.O. Box 4000
   Stormville, N.Y. 12582-4000

Additional Plaintiffs may be added on a separate sheet of paper.

All in their Official and Individual Capacities.

3. a. Defendant: Steven Grimaldi

   Official Position: Correction Officer

   Address: Coxsackie Correctional Facility
   11260 Rt. 9 West,
   Coxsackie, N.Y. 12051

b. Defendant: _Sgt. Pavlin, B._

Official Position: _Sergeant_

Address: _Coxsackie Correctional Facility_
_11260 Rt. 9 West_
_Coxsackie, N.Y. 12051_

c. Defendant: _C.O. Hoffstetter_

Official Position: _Correction Officer_

Address: _Coxsackie Correctional Facility_
_11260 Rt. 9 West_
_Coxsackie, N.Y. 12051_

Additional Defendants may be added on a separate sheet of paper.

4. PLACE OF PRESENT CONFINEMENT

a. Is there a prisoner grievance procedure at this facility?

☑ Yes        ☐ No

b. If your answer ro 4a is YES, did you present the facts relating to your complaint in this grievance program?

☑ Yes        ☐ No

If your answer to 4b is YES,

(i) What steps did you take? _I wrote, mailed, and had Grievances filed. They were all sent to be decided by DOCCS' central office._

(ii) What was the final result of your grievance? _Some were ACCEPTED and some were denied._

## PARTIES

3.   d.   C.O. Jablanski
          Correction Officer
          Coxsackie Correctional Facility
          11260 Rt. 9. West
          Coxsackie, N.Y. 12051

     e.   C.O. Woods, S.
          Correction Officer
          Coxsackie Correctional Facility
          11260 Rt. 9 West
          Coxsackie, N.Y. 12051

     f.   Todd Looman
          Sergeant
          Coxsackie C.F.
          11260 Rt. 9 West
          Coxsackie, N.Y. 12051

     g.   Doctor Miller, J.
          Medical Doctor
          Coxsackie C.F.
          11260 Rt. 9 West
          Coxsackie, N.Y. 12051

## PARTIES

3.  h.  Richard Adams
         Medical Doctor
         Clinton Correctional Facility
         1156 Rt. 374
         Dannemora, N.Y. 12929

    i.  Doctor Johnson, Vonda
        Clinton Correctional Facility
        (Medical Doctor)
        1156 Rt. 374
        Dannemora, N.Y. 12929

If your answer to 4b is NO - why did you choose to not present the facts relating to your complaint in the prison's grievance program? _____

_____

_____

c.    If there is no grievance procedure in your institution, did you complain to prison authorities about the facts alleged in your complaint?

☐ Yes          ☐ No

If your answer to 4c is YES,

(i)    What steps did you take? _____

_____

_____

(ii)   What was the final result regarding your complaint? _____

_____

If your answer to 4c is NO - why did you choose to not complain about the facts relating to your complaint in such prison? _____

_____

5.    PREVIOUS LAWSUITS

a.    Have you filed other lawsuits in state or federal court relating to your imprisonment?

☑ Yes          ☐ No

b.    If your answer to 5a is YES you must describe any and all lawsuits, currently pending or closed, in the space provided below.

For EACH lawsuit, provide the following information:

i.    Parties to previous lawsuit:

Plaintiff(s): _____ Bobby Grubbs _____

Defendant(s): _____ John Serrell et al _____

ii.  Court (if federal court, name District; if state court, name County):

_Northern District Federal Court_

iii. Docket number: _____

iv.  Name of Judge to whom case was assigned: _Judge Hummel_

v.   Disposition (dismissed? on appeal? currently pending?): _Currently pending_

vi.  Approximate date of filing prior lawsuit: _August 2014_

vii. Approximate date of disposition: _____

6.                          **FACTS**

Set forth the facts of your case which substantiate your claim of violation of your civil and/or Constitutional rights. List the events in the order they happened, naming defendants involved, dates and places.

Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint. (You may use additional sheets as necessary).

At Coxsackie Correctional Facility on Dec. 17, 2013, I was beaten maliciously and sadistically by C.O. Grimaldi, C.O. Hoff-stetter, C.O. Jablanski, C.O. Woods, and by another "seasoned" officer summoned by Sgt. Pavlin. Most of this UNPROVOKED beating was done while I was restrained in handcuffs. Sgt. Pavlin not only observed this, he urged and instructed officers to beat me while he kept watch for potential witnesses. Grimaldi, Hoffstetter, and Jablanski testified in Greene County Criminal Court against me regarding the made up allegations of 12/17/13. They PERJURED during testimony and I was 100% acquitted at trial.

(SEE FOLLOWING PAGES)

## FACTS

1. On December 17, 201$ (2013) at about 8:49 P.M. I was chased down the A-1 Block corridor of cells by C.O. Grimaldi.

2. Without provocation, C.O. Grimaldi reached up, placed his hands around my neck and choked me while banging my head against the wall of odd numbered cells.

3. Immediately prior to this, I had voluntarily hung up from talking with my mom on the inmate phone which is in the rec room. An inmate neighbor (ex-neighbor, I was moved one flight below, earlier this same day) and I agreed he'd loan me a pouch of tobacco after his barbering evening job.

4. When the ex-neighbor returned from bar-bering which is done in the gym, I got his attention by saying his name loudly while holding the phone away from my mouth. The entrance to the A-Block rec room is approx. 8 feet away from the phone which I was using. When he saw me, he pulled a new hermetically sealed pouch out, and showed it to C.O. Grimaldi and asked "Can I give this to him?"

5. C.O. Grimaldi responded by waving my ex-neighbor away in a very frustrated manner.

This response caused my ex-Neighbor to quickly make an about-face turn and enter the stair-well leading to his 2nd tier housing floor.

6. This is why shortly afterwards, I decided to hang up and lock myself inside of my cell for the night. Besides that, I still needed to clean, and unpack my property.

When walking past C.O. Grimaldi, three other lounging officers, Sgt. Pavlin, and the gym (Sgt. LOOMAN) sergeant, I doubled back to inquire if I was being called. The area was crowded and Noisey.

7. C.O. Grimaldi responded by saying "Yeah YOU... Stupid!!!"

8. I turned on my heels to go back to my cell, but before I could enter my cell, all of the lounging security staff abruptly exited into the outside corridor because C.O. Grimaldi jumped out of his seat to chase after me.

9. When he caught up to me we stood there. Just looking at eachother for a beat or two. Then Grimaldi yelled "I'm an officer!" and "Who do you think you are?!"

10. Again we are just looking at eachother. After a beat he reaches up and chokes me while banging my head against the wall. I deflected his grasp by swinging my arm clockwise.

11. After getting him to release his hold on me we stood there again. Waiting. So I said "Man, I'm going in my cell."

I took a couple of steps to go around C.O. Grimaldi to go inside my cell which was behind him.

12. C.O. Grimaldi stepped into my path and spread his arms wide to block me from the entrance to my cell. So I stopped. Again we stood there looking at one another.

13. Then suddenly C.O. Hofstetter grabbed me from behind and viciously threw me to the ground. I landed face first.

14. I believe this is where most of my injuries occurred. The unnecessary force in which I was thrown to the ground caused the fracture to my face and other facial bruises. That includes my busted lip and chipped upper right canine tooth.

15. C.O. Hofstetter sat on my back, facing my head, while pinning my arms to the ground. This caused me loss of wind / knocked the wind out of me, resulting in my squirming for air.

16. Shortly after my impact to the ground, C.O. Jablanski grabbed my legs, pinning them to the ground.

17. While pinned to the ground, C.O. Grimaldi sa — distically ran around us searching for an opening between our bodies to inflict pain upon me. He saw that my neck and head were free so he reached

in and down, almost grabbing my neck again with both hands to choke me.

18. If I hadn't motioned as if I was going to bite his hand, he would not have withdrawn them like he had. I never made contact with C.O. Grimaldi.

19. I was held on the ground, pinned, with C.O. Hofstetter on my back (he's a huge man) for quite a few minuttes. This may have contributed to the bruised (flank) ribs I sufferred.
Area

20. I was then released, brought to my feet and handcuffed per Sgt. Pavlin.

21. While handcuffed, I was escorted to the medical department by C.O. Woods and Sgt. Pavlin. Instantly, and during the entire trip to medical, C.O. Woods sadistically twisted the metal handcuffs around my wrists causing pain, breaking the skin, and bleeding. There was no reason for that. I still have the scar to this day.

22. Upon entering the nurse's exam room I was violently shoved face first into the far corner cinder block wall, next to the tall lockers. This is when Sgt. Pavlin threateningly barked at me saying "I'm getting a seasoned officer for you." My bloody face print was smeared all over that cinder block painted wall.

23. I neglected to mention that when in route to the medical department from the A-1 rec room, we crossed diagonally through the rotunda. Seated at the rotunda desk was C.O. Perkowski. He was conversating with commissary cashier, Ms. A. Primo, who stood beside him. In a desperate attempt to get help, I opened my mouth to display to them both the flow of blood coming from my mouth. Since I was being roughly handled while handcuffed I assumed they'd sense something was not right.

*SEE:
SUPPLEMENTAL of ITEM 24

24. Sgt. Pavlin then instructed C.O. Woods to stop. C.O. Woods shoved me violently into the corkboard adjacent to the corridor exiting the rotunda. This caused my facial blood to splatter against the posted paperwork that was tacked to the corkboard. Sgt. Pavlin said "Did you just stick your tongue out at her?" I did not respond. Then we continued toward the medical department.

25. Once in the exam room Sgt. Pavlin stood outside in the corridor and attentively kept watch looking up and down the hallway for potential eye or earshot witnesses.

26. Shortly afterwords, the "Seasoned Officer" arrived. This seasoned officer repeatedly and brutally struck me with his fist and elbow about my face

# FACTS

## Item # 24

### (Supplemental)

As stated, while handcuffed, C.O. Woods shoved me violently into the rotunda cork-board. As I was held in place with my face against the posted notices, Sgt. Pavlin punched me in my face with a closed fist. These two blows were on the right cheekbone as I was faced away from the cashier and the security officer who was seated at the rotunda desk.

This specific assault was recorded on the rotunda cameras. I requested copies of this footage but was denied by Coxsackie's F.O.I.L. department.

(# 26 Continued)

and my torso. They taunted me with threatening
and unanswerable questions. If I was silent
or answered these questions he'd use his elbow
to choke me, pressing it against my neck.
This all happened while waiting for then R.N.
Bergman (Now Married). She seemed to take
forever to arrive. I remained handcuffed the
whole time. Also Sgt. Pavlin would step into
the exam room briefly to continue prompting
the ongoing brutal beatings and then repeatedly
go out into the hallway, checking for witnesses.
* (They only stopped hitting me because I told them *
   that I am HIV positive. Otherwise they'd have continued.
(Point no. 24 was recorded on the rotunda
   camera. When I requested it in writing via
   F.O.I.L., they answered saying they did not
   have the footage.)

27. R.N. Bergman finally arrived and allowed me
to write a statement on the use of force exam
report. Sgt. Roach took photos of me. After they
both left the exam room, Sgt. Pavlin repeatedly
made sexually discriminatory and extremely deroga-
tory comments about me. He'd say "Does it have
it's I.D. on him?" and "Get it to put it's shoes
on so we can take it to SHU." etc. etc.
28. Again, en route to the SHU (Special Housing Unit)
C.O. Woods twisted the handcuffs around my

wrists. They caused pain, cut into my skin and bleed – ing. This was done sadistically and maliciously only. I gave NO reason to be beaten or brutalized from the very beginning of this entire incident.

29. I was kept in SHU for the purpose of hiding me from witnesses who could see the extent of my various and very visible injuries. They made sure that superficially, my body looked healed and only then did they transfer me to Upstate Correctional Facility in early February 2014.

30. The following are the injuries I reported to medical at Coxsackie Correctional Facility: Three lumps on my forehead from center to right temple, possibly five lumps in total, my right cheekbone is dented, bruised, tender, and sore; my right eye is blackened, headaches, open cuts on wrists, arms and legs, sore or broken (bruised) ribs Right lower side, spitting up blood at use of force exam (at least 1/4 pint).

31. I submitted written reports of all of these injuries on 12/18/13, 12/24/13, 12/25/13, 12/26/13, 12/29/13, 12/31/13, 1/6/14, 1/12/14, 1/27/14, 1/28/14, and after avoiding me (I was advised by a nurse that) the Doctor (Miller) is out and won't return until next week. This occurred on 1/29/14. I was trans – ferred to Upstate C.F. on 1/31/14.

32. Further written and verbal requests I've made are as follows: On 12/27/13 the sick call nurse said she'd tell the doctor about my bruised ribs. On 12/30/13 my sister Elaine Grubbs came to Coxsackie C.F. to visit me. She observed my in-juries and called up to Coxsackie C.F. requesting that I get medical treatment for all of my injuries. 1/2/14, I wrote to the Executive offices of Dept. of Corrections asking for medical treatment. On 1/7/14 a counselor came to me saying Elaine called asking that I get examined by a doctor. She asked if I reported my injuries to sick call. I told her "Every single day." On 1/12/14, a Captain came to me asking if I had anything to add to my seven page report of the physi-cal abuse on 12/17/13. I told him that I needed medical attention.

33. On 1/13/14 and on 1/18/14 I wrote to Dr. Miller. The first was to advise him that stick-ing his finger through the food slot of my cell and running it down the side of my face on 1/13/14 was an outrageously insufficient exam. On 1/18 I asked for a more accurate diagnostic test for my face.

34. On 1/14/14 I wrote to the chief medical officer in Albany, N.Y. (DOCCS) as well as on 1/28/14.

On 1/16/14, I wrote to Coxsackie C.F.'s Nurse administrator. On 1/27/14 I wrote to sick call (request) stating specifically that it had been Fourty days and my eye was still black and the bruise to my face had not subsided.

Obviously my medical needs were being ignored. Otherwise I would have had no reason to keep trying verbally and in writing to receive medical treatment at Coxsackie Correctional Facility. Dr. Miller was designated as my provider during my entire stint at Coxsackie.

35. I arrived at Upstate Correctional Facility on Feb. 3, 2014. I had to start all over with repeatedly writing to sick call, grievances, and to the Nurse administrators (P.A., N.P., etc.) to request medical treatment.

Finally on July 3, 2014, I was sent to Alice Hyde Medical Center in Malone, N.Y. I was diagnosed by CT Scan as having my face/cheekbone fractured on 12/17/13.

* Regarding item No. 26... The only reason the beating ceased shortly before the Nurse finally arrived is because I pleaded, due to the extreme amount of my blood,

"Please stop... I'm HIV Positive." Otherwise the officers would have resumed beating me maliciously and sadistically (while I was in handcuffs) after the nurse left the examination room.

36. Between 12/17/13 and 1/31/14 while hidden away in Coxsackie C.F.'s SHU (dungeon), I requested and received intensive and ongoing mental health treatment. I was then held in Downstate C.F. until 2/3/14 in transition.

37. Once transferred to Upstate Correctional Facility in the SHU I continued to follow procedures requesting medical treatment for headaches and the fracture to my face. I requested to be seen by a sick call nurse on 2/5/14, 2/9/14, 2/16/14, 3/11/14, 3/20/14, 3/23/14, 4/30/14 and 5/12/14. On 3/24/14 the sick call nurse told me to stop writing to them about my face.

38. I wrote about these medical issues to the nurse administrator at Upstate C.F. on 2/12/14, 3/26/14, 4/29/14 and 4/29/14. She visited me in person on 3/12/14.

39. On 3/27/14 the physician's assistant examined me saying the bone in my face is protruding and is bent onto the sciatic nerve.

40. On 4/1/14 I saw Dr. Collins (the Infectious Disease Spec.). He pleaded with me to resume taking my HIV meds. I saw no need to take life lengthening medications. He made a psychiatric referral about my outlook, etc. I expressed my fears, anxiety and apprehensiveness about being assaulted by staff so viciously in ongoing mental health visits and requested sessions. I had not taken any HIV meds since the day I was so severely beaten, 12/17/13.

41. The psychiatrist at Upstate C.F. ultimately advised security staff to place me in a cell by myself and away from mostly homophobic SHU population. I had some difficulties with the double-bunking roommates.

42. On 2/20/14 I was sent to Great Meadow C.F. from Upstate to get hemorrhodal surgery at Albany Med. I was apprehensive because I had been brutally assaulted by staff at Great Meadow C.F. on 2/1/12 (See Grubbs v. Serrell et al 9:14-cv-0467 GLS-CFH).

I had good reason to be afraid. The admissions process to Great Meadow C.F.'s SHU was extremely harsh and brutal. I was stripped naked and when I misunderstood a verbal instruction, I was choked while naked.

Once I returned to Great Meadow's SHU upon my return from Albany med, I was refused the gauze, the medical undies and the sits bath given to me for post surgery care by the surgeon. These items posed no security risk whatsoever.

Hence when I was told that I'd have to return to Great Meadow's SHU for a surgical reconstruction consult for the fracture to my face, I refused. Especially since I had recently had fifteen Great Meadow employees served summons for the Grubbs v. Serrell civil claim. It was best to get surgery when my aftercare items, or my safety, would not be withheld from me frivolously. I was due to be released from the SHU and GHU status shortly after being offered the surgical consult.

43. On 2/18/14 a nurse took an EKG diagnostic after (or before) my 2nd pre-surgery interview via phone (speaker) with Albany Med. When I told Albany Med of the injury to my face due to being beaten at Coxsackie on 12/17/13, the EKG nurse got upset and threatened/intimidated me. I responded by saying I'd write to DOCCS in Albany. She said, "Albany doesn't give a shit either!"

44. I continued to report the painful injury to my face and headaches to sick call on 3/31/14, 4/2/14, 4/6/14, 4/7/14 and 4/8/14. I wrote to the phys. asst. Dr. Kawalchuck on 4/18/14 and to the nurse administrator on 4/24/14 and 4/29/14. Again to Phys. Asst on 5/6/14, all about my face injury and headaches.

45. As mentioned, the CT-Scan of my face was done on 7-3-14. I was transferred from Upstate C.F. and released from SHU status on 9-11-14.

46. Despite being 100% innocent of the fabricated misbehavior report, written by C.O. Grimaldi, he testified at a grand jury and I was indicted for three felony

charges in Greene County Criminal Court. (Indictment No. 14-206.) The allegations cited were specifically what was written on the misbehavior report dated Dec. 17, 2013.

47. Reluctantly, I was sent to be temporarily housed at Great Meadow C.F. to appear in Greene County Criminal Court during the following periods of time: Oct. 10, 2014 – Oct. 20, 2014, Feb. 9, 2015 – Feb. 17, 2015, June 2, 2015 – June 25, 2015 and trial: Oct. 16, 2015 – ~~Oct~~ Nov. 2, 2015.

48. During each horrible visit to Great Meadow C.F. I endured severe mental and physical trauma. Being that I filed a civil suit suing 15 Great Meadow employees I was so nervous that I wet the bed each time I visited Great Meadow C.F.

49. I was deprived of supplies (i.e. writing paper, envelopes, pen) and was kept on the cold ground floor of E-Block (the reception block). I'm referring to the first period of Oct. 2014. The officer who escorted me from the draft room treated me very harshly and threatened me with physical violence. The nurse advised him to take me directly to the mental health unit due to her medical

questionnaire assessment. He told the E-Block officer seated at his desk that "This fucker is playing MHU games because he doesn't want to testify in court." This officer made absurd assumptions I assume because he was forced to divert from his minimal duties.

50. I was not seen by the sick call nurse after writing and sending requests. For some reason I was not receiving my Neurontin (for polyneuropathy) on nurse rounds. I wrote about this and the discomfort of painful nerve damage while travelling for hours and hours in medical restraints to the head provider (Dr. Karandy) and to the Chief Medical Officer at DOCC's in Albany. I included the pain and numbness I was having with my face.

51. I repeatedly wrote sick call about my stomach and having the runs. On 10/16/15 Nurse Lipka said she was not getting any sick call slips from me. (Both Lipka and Karandy were defendants in civil suit 9:14-CV-0467 GLS-CFH.)

52. I was not let out for the yard or to use the phone. No officer would pick up my outgoing U.S. mail.

53. I wrote a letter to the Great Meadow Superintendent about the pain in my face and my

other hardships. (Oct 18, 2014).

54. The cell where I had been assigned was ad-
jacent to the front where the block officer's desk
was. As other officers walked by they made
mocking comments such as "Are there assholes on
this company?" One officer took his stick and
banged on the shower gate while I was naked
in the shower (Oct. 17/14). He was the 3-11pm
company (E-Block) officer. I also had asked
him why after 7 days on Keeplock reception
status was I still not being let out for the
yard.

55. On 10/17/14 I received one pack of
tylenol and one pack of Diotame (antidiarrheal).
I received no other medications for the
entire stay of 10/10/14 - 10/20/14.

56. During my stay at Great Meadow 2/9/15 - 2/17/15
I suffered with neuropathy pain, a foot callus, clus-
ter headaches, dry skin and pain to my face from
the fracture (it healed erroneously).

57. I requested special access to the law library
but never received a callout. I had also not
been cleared by my temporary ORC (offender
rehabilitation counselor) to be released from
reception Keeplock status the entire time.

58. I requested the general library's keeplock book cart and never received it. Keep in mind that when being temporarily transferred for court, inmates are not allowed to bring books, lotion or hair/scalp essentials. Especially for someone who has HIV illness (which the initial Coxsackie defendants were aware of), like myself, it can be very problematic. And it was.

59. It was very cold in E-Block reception cells. This increased the amount of trauma I experienced when wetting the bed. Being unable to keep a dry bed until morning is emotionally upsetting to me without having to be extremely cold.

60. I should have mentioned that upon my return to Clinton C.F. after my first court trip to Great Meadow in Oct. 2014, C.O. Everleth, (defendant in the civil case against Grt. Meadow employees) a former Great Meadow employee, threatened me and called me homophobic slurs when she separated me from the other inmates who arrived on the bus with me on 10/20/14.

61. My third trip to Great Meadow C.F. to appear in Greene County Criminal Court was very lengthy and exorbitantly distressing. It began with the newly appointed sergeant who did the intake

interview with newly arriving inmates. (I was a Great Meadow permanent ~~off~~ resident when he was still an officer.) He made a spectacle of me by loudly reciting the beating and grievance process of C.O. Sorrell (my civil case still pending) and he also detailed my horrible experience with "Little Grimaldi over at Coxsackie.". His subordinate officers laughed and ate it up like candy. Then he summoned one of the bigger officers to man-handle the inmate in front of me because he didn't like the inmate's answer to a question. The huge officer palmed the inmate by his ears as if he'd squeeze the guy's scull together. He lifted this man up off of the ground still holding/palming the mans' ears, causing his feet to dangle in the air. Then the sergeant says "you'd better give me a different answer or I'll punch my officer in his face and say you did it."

62. Unfortunately this particular visit to Great Meadow I had arrived with severe stomach problems. I wrote and mailed out sick call requests immediately and daily. I also detailed that I am not receiving any of my prescribed Neurontin for painful nerve damage. The pain and throbbing to my face was also reported. I was at Great Meadow

this trip from 6/2/15 until 6/18/15 without any of the prescribed Neurontin needed for nerve damage pain. I was screamed at by the pharmacist, told to leave the sick call nurses exam room, and given lots of different excuses verbally about why my prescribed medication was not being administered to me.

63. From June 14, 2015 until June 25, 2015 I was held in my reception cell on quarantine status. I was not allowed to leave my cell except to take a shower. I assume the prison escape may have caused me, a Clinton inmate, to be on hold until things were cleared up. However, my having sunshine at Great Meadow would not have placed Clinton C.F. at risk securitywise. This hold-in status caused me to miss out on being seen by the facility doctor, from dropping sick call requests (additional ones) and to get to law library. It was greuling. This facility doctor (Dr. Karandy) is the doctor who referred me to the specialist and ultimately began me on Neurontin per the specialists diagnostic testing results.

64. My final court trip from Clinton to Great Meadow was Oct. 16, 2015. When given our bedding and supplies the Laundry supervisor refused to issue

me a pen, writing paper, a small broom, a decent mat-
tress and other necessities. She said "He's lucky he
even got that... he's only here for court." This was
her response after I asked my draft escort officer
about the shortage of my items. I also never
received the requested Notary service nor photo —
copies during any of my visits to Great Meadow, es-
pecially this trip.

65. ~~xxxxx~~ I was taken to Green County Court on
10/20/15 it was a very long and trying day doing
jury selection. One of my escort officers seamed drunk.
He kept urging me to cop out. He kept going on about
a cookout he needed to get to. After court he/they
drove to several stops Cumberland Farms, McDonald's,
etc. then took me directly to my cell. Procedure
is to go to medical so I can get my meds and
my dinner tray of food. I did not receive ei-
ther that night. I did tell two other officers and
they gave me the "I'll call for your food." type of
brush off.

66. On Oct. 21, 2015 during the lunch break at trial
my escort officers advised me that they asked Great
Meadow staff for a bag lunch for me and were de-
nied. The judge had his ~~lawyer~~ lawyer call Great Meadow
to advise them to be sure to give me my meds

and the meals that I'm supposed to be getting.
The judge got me a meal from what their detainees
receive next door.

67. The same occurred on 10/23/15, No bag lunch
was issued for my day in court. My attorney
purchased lunch for me. This was the day that
the jury returned a VERDICT of NOT GUILTY
for ALL CHARGES brought against me regarding
the incident in question : 12/17/13.

68. I was not released off of quarantine
status for this entire trip: 10/16/15 — 11/2/15.
Not receiving recreation, being looked over for meals,
and not receiving medication prescribed for painful
Nerve damage. Being verbally degraded.

69. I can't be sure but on one of these trips to
Great Meadow, when going back to Clinton we
witnessed several officers physically beating
on a mentally challenged inmate. The inmate was in handcuffs and looked as if
it was hard for him to stand up straight
without support or time to steady himself.
Officers at Great Meadow beat him so se-
verely that he was unable to leave with us
at all that day. Terrible things happen frequent-
ly at the draft room at Great Meadow C.F.

70. In reference to FACT item number 8 as well as item number 6, the following is the name of the gym Sergeant: Todd Looman. The other security officers who were lounging around with Sgt. Looman and Sgt. Pavlin was C.O. Hofstetter, C.O. Jablanski, and C.O. Woods. It's important to note that all were present before and when C.O. Grimaldi abruptly jumped out of his chair to chase me.

71. The fact that they raced out into the corridor instead of restraining C.O. Grimaldi from agressively chasing after me displayed depraved indifference to my safety. My being assaulted was 100% preventable by one or all lounging staff members.

MEDICAL   (9/11/14 - 9/8/16)

72. While housed at Clinton Correctional Facility I have made an exorbitant effort to obtain medical shoes and to receive corrective surgery to the fracture in my face. These efforts include verbally advising my provider (Dr. Adams) at every appointment, frequent and almost bi-weekly visits to sick call, writing multiple pleading letters to: Dr. Johnson at Clinton, to the Nurse administrator, and one or two letters to Dr. Calley at Clinton. I've also

written to the Chief Medical Officer at the
Dept. of Corrections main office in Albany, N.Y.
Besides that, I've submitted a number of detailed
medical grievances and I also wrote a letter to
the commissioner of the Dept of Corrections. It
got to the point that the nurses would tell me
that I report to sick call too often. My verbal
response was that My medical issues were (are) not
being treated (nor addressed).

73. Each time I requested treatment for my face,
I would complain of the following: Pain, feelings
of pressure with numbness and discomfort. Especially
when washing my face, grooming my hair, brushing
my teeth, laying on my right side, applying facial
skin aids, scarring and skin infections (abscesses),
etc. Daily pain.

74. Each time I requested treatment for my feet,
I would complain of pain, aching, soreness, bruising,
calluses, and fungal growth as well as numbness/
burning. Especially when wearing required standard
Dept. of Corrections issued boots. Mandatory to be
worn on all outside trips (i.e. medical trips, trips to
court, etc.) and to prison jobs (i.e. tailor shop or
messhall workers, etc.). Daily pain.

75. The face to face visits when I told Dr. Adams (and showed Dr. Adams) the medical issues with the pain of my face and my serious need for medical shoes were 10/7/14, 10/30/14, 12/9/14, 4/8/15, 11/10/15, 1/19/16, 4/5/16, 5/10/16. I've written to Dr. Adams dated 3/28/16 and I handed him notes of my medical observations a few times. He did not get me adequate medical care.

76. Dr. Johnson is the head doctor at Clinton C.F. I've written to her repeatedly about the medical problems of my face and about my feet pain. Some of them are dated: 11/24/14, 2 on 11/19/14, 5/8/15, 5/20/15, 9/10/15, 11/8/15 and 12/22/15. Also 5/19/16. She has never responded by writing or otherwise, ever.

My sister Linda Grubbs calls Clinton's Med. Dept.
* Besides my letters, I am aware of phone calls placed to the medical dept. at Clinton C.F. These calls only prompted for me to be seen by Dr. Adams who was deliberately indifferent to my serious medical needs esp. Medical (orthopedic) shoes, and the proper referral to a surgeon for my face. There are hundreds and hundreds of medical records of me being seen by sick call nurses about my feet and my face. Literally.

~~Discrimination   and   Retaliation~~

77. I have a huge amount of dates and corresponding documentation regarding my frequent (once per week or more) visits to sick call with complaints about the fracture to my face and my serious need for medical boots. The nurses who triage and attend to inmates at sick call do advise the provider (Mine is Dr. Adams) if the inmate has re- peated serious medical complaints. Therefore I was told on numerous occasions by the sick call medical staff that they will tell the doctor of my medical issues.

This medical documentation can and will be provided during the discovery phase.

7.                        **CAUSES OF ACTION**

Note: You must clearly state each cause of action you assert in this lawsuit.

### FIRST CAUSE OF ACTION

A. 8th Amendment - Excessive Force: Sgt. Pavlin, Grimaldi, Hoffstetter, Jablanski, and Woods.

B. Failure to Protect Delib, Indifference: Sgt. Pavlin, Sgt. Looman.

### SECOND CAUSE OF ACTION

Delib. indifference to Serious Medical Need: Dr. Miller, Dr. Adams, Dr. Johnson.

### THIRD CAUSE OF ACTION

Discrimination due to sexual Orientation: Sgt. B. Pavlin.

8. **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff(s) request(s) that this Court grant the following relief:

Judgment in his favor and damages in his favor against all defendants in an amount sufficient to compensate him for physical pain and mental anguish as well as paralegal fees and total expungement of the 12-17-13 misbehavior report. Disposition: Loss of 1 yr Good Time.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: Sept. 18, 2017

Bobby Grubbs

Signature of Plaintiff(s)
(all Plaintiffs must sign)

COMPENSATORY DAMAGES for COURT FEES, PARALEGAL HOURS, POSTAGE COSTS, PAIN & SUFFERING AND MENTAL ANGUISH.

02/2010 DISREGARD THE FOLLOWING:

Also for a court order to give the plaintiff the reconstruction surgery to restore his face and the asymmetry as well as the pain and numbness. The plaintiff prays for compensatory and injunctive relief. Compensatory: $700,000.00 (Seven Hundred Thousand)

The plaintiff also seeks an injunction to receive medical shoes esp. for pain and poor circulation.

Injunctive: Expunge False Misbehavior Report
: Corrective Surgery
: Orthopedic Shoes