UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BOBBY GRUBBS,

                            *Plaintiff*,

               -against-

STEVEN GRIMALDI et al..

                            *Defendants*.

9:16-CV-1476
(TJM/DJS)

---

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO RULE 56

                            ERIC T. SCHNEIDERMAN
                            Attorney General of the State of New York
                            Attorney for Defendants
                            The Capitol
                            Albany, New York 12224-0341

Louis Jim
Assistant Attorney General, Of Counsel
Bar Roll No. 517401
Tel.: 518-776-2574
Louis.Jim@ag.ny.gov

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

ARGUMENT .............................................................................................................................7

I.      PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH
RESPECT TO HIS CLAIMS AGAINST DR. MILLER ...................................................................8

II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIMS ................................................11

        a.      Dr. Miller's Examination Of Plaintiff On January 13, 2014 Did Not
Reveal Any Medical Problems................................................................13

        b.      Dr. Johnson Was Not Personally Involved In Any Alleged
Eighth Amendment Violations As She Was Not Personally
Involved In Plaintiff's Medical Care ......................................................14

        c.      Dr. Adams Provided Plaintiff With Appropriate Medical Care .............15

III.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY .....................................................17

CONCLUSION........................................................................................................................18

# PRELIMINARY STATEMENT

Defendants Jon Miller, Richard Adams, and Vonda Johnson, by their attorney, Barbara D. Underwood, Attorney General of the State of New York, Louis Jim, of counsel, submit this memorandum of law in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff claims that the foregoing defendants acted deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff's claims against Dr. Miller arise from plaintiff's incarceration at Coxsackie Correctional Facility ("Coxsackie C.F."), and plaintiff's claims against Dr. Johnson and Dr. Adams arise from plaintiff's incarceration at Clinton Correctional Facility ("Clinton C.F."). For the reasons set forth herein and in the accompanying submissions, the foregoing defendants are entitled to summary judgment.

# STATEMENT OF FACTS[1]

## Plaintiff Did Not Appeal Any Grievance Relating To His Claims Against Dr. Johnson To The Central Office Review Committee

In accordance with the federal Prison Litigation Reform Act ("PLRA"), the New York State Department of Corrections and Community Supervision ("DOCCS") has established the Inmate Grievance Program ("IGP"). *See* 7 N.Y. Code of Rules & Regs. § 701 *et seq.*; *see also* DOCCS Directive #4040.[2] To exhaust the IGP, a prisoner must complete three steps: (1) plaintiff files a complaint (i.e. grievance) with the Inmate Grievance Review Committee ("IGRC") clerk at the facility; (2) an appeal of the IGRC determination to the superintendent; and (3) an appeal of the superintendent's determination to the Central Office Review Committee ("CORC"). *See* 7 NYCRR § 701.1. Plaintiff is fully familiar with DOCCS's grievance process. Jim Decl. Ex. A ("Pl.'s Dep.") at 14-15.[3]

Plaintiff's medical claims against Dr. Miller arise from alleged events occurring in January 2014 during plaintiff's incarceration at Coxsackie C.F. *See* Am. Compl. ¶¶ 33-34; Pl.'s Dep. at 54-55. While housed at Coxsackie C.F., plaintiff submitted one appeal to CORC from a facility level grievance decision. Seguin Decl. ¶¶ 18-19 and Ex. B. On January 2, 2014, plaintiff filed Grievance No. CX-18013-14 ("Assault'), in which he complained of an alleged assault by security staff. Seguin Decl. ¶ 20 and Ex. C. CORC rendered a final determination on that grievance on May 21, 2014. Seguin Decl. ¶ 20 and Ex. C. The grievance does not contain any

---

[1] The facts below are set forth in the accompanying Declarations of Jon Miller, Richard Adams, Vonda Johnson, Rachel Seguin, and Louis Jim; any exhibits annexed thereto; and all prior pleadings and proceedings herein.

[2] A true and correct copy of Directive #4040 is attached as Exhibit A to the Seguin Declaration.

[3] Citations to the deposition transcript refer to the original pagination.

claim that Dr. Miller, or any other DOCCS employee, was indifferent to plaintiff's medical needs. Seguin Decl. ¶ 21 and Ex. C.

**Plaintiff's Medical Care at Coxsackie Correctional Facility In January 2014[4]**

Plaintiff medical indifference claim against Dr. Miller arise from the medical treatment that Dr. Miller provided to plaintiff on January 13, 2014 at Coxsackie C.F. Am. Compl. ¶¶ 33-34; Pl.'s Dep. at 53-55. Dr. Miller examined plaintiff after plaintiff's family members called the facility and claimed that their brother was in severe chest pain and needed an x-ray. Miller Decl. ¶ 9; DOCCS 260. This visit was not made pursuant to SHU policy in which inmates may request medical evaluation at the time of daily nursing rounds, which occur three times a day. Miller Decl. ¶ 9. Plaintiff requested a medical examination due to worsening neuropathy pain. Miller Decl. ¶ 10; DOCCS 260.

Due to the irregular of the request for the medical examination, Dr. Miller was unable to obtain security staff to open the cell door to examine plaintiff in his cell. Miller Decl. ¶ 10. Plaintiff admitted that Dr. Miller would have been able to see plaintiff's whole body and whole face. Pl.'s Dep. at 55. Dr. Miller was also able to make a physical examination of plaintiff, finding that: (a) plaintiff had full functional ability without evidence of guarding or splinting; (b) palpitation of plaintiff's rib cage did not reveal any reproducible tenderness; (c) plaintiff did not have any significant bony protrusions on plaintiff's right face; and (d) that plaintiff was able to open and close his jaw without difficulty during the examination and interview. Miller Decl. ¶

---

[4] A true and correct copy of the relevant portions of plaintiff's certified medical records is attached as Exhibit B to the Jim Declaration. Citations beginning with "DOCCS" refer to the bates stamped medical records of plaintiff.

11; DOCCS 260. Dr. Miller also made a request for radiographic evaluation of the ribs. Miller Decl. ¶ 11; DOCCS 260.[5] Plaintiff left Coxsackie C.F. on February 3, 2014. DOCCS 257.

**Plaintiff's Medical Care At Clinton Correctional Facility
From September 2014 Through Mid-September 2016**

Plaintiff entered Clinton Correctional Facility ("Clinton C.F.") in or about September 2014. Am. Compl. ¶ 72; Pl.'s Dep. at 56. The medical conditions forming the basis of his claims against Dr. Adams and Dr. Johnson relate to plaintiff's alleged facial facture and callouses on plaintiff's feet. Am. Compl. ¶ 72-74; Pl.'s Dep. at 57-58 and 62. Plaintiff believes that he should have been referred to a specialist or received medical shoes. Pl.'s Dep. at 59.

On October 31, 2014, plaintiff saw Dr. Adams for a list of medical complaints. Adams Decl. ¶ 11; DOCCS 184. Among other things, plaintiff claimed that he had an old maxillary fracture and stated: "I want it fixed. It reminds me of the nastiness of it all." Adams Decl. ¶ 11; DOCCS 184. Dr. Adams examined plaintiff, and Dr. Adams did not find any gross asymmetry of the face. Adams Decl. ¶ 11; DOCCS 184. Although plaintiff did not complain of pain or disability, Dr. Adams prescribed an anti-inflammatory for any pain that plaintiff might be experiencing. Adams Decl. 11; DOCCS 184.

During Dr. Adams's examination of plaintiff on April 8, 2015, plaintiff sought a referral for an ENT surgeon, and he complained of numbness of the face when doing his hair or brushing his teeth. Plaintiff said he needed "facial reconstruction." Adams Decl. ¶ 14; DOCCS 170. Dr. Adams responded that plaintiff was previously denied a referral and recommended that plaintiff wait for the results of his pending grievance about the denial. Adams Decl. ¶ 14; DOCCS 170.

---

[5] The record also includes several instances in which various medical staff at Coxsackie C.F. addressed plaintiff's medical needs, including the prevision of prescription medications, allergy medication, and blood test monitoring after January 13, 2014, and before he entered Upstate Correctional Facility on February 3, 2014. *See* Miller Decl. ¶¶ 13-17; DOCCS 257-258.

4

At the same appointment, plaintiff said he needed foot callouses fixed. Adams Decl. ¶ 14; DOCCS 170. In response, Dr. Adams cut away and shaved off plaintiff's callouses with a scalpel and instructed plaintiff on proper foot care. Adams Decl. ¶ 14; DOCCS 170. Dr. Adams did not see a need for special issue or medical boots. Adams Decl. ¶ 14; DOCCS 170.

At a medical examination on September 30, 2015, plaintiff complained of atypical face pain arising from an alleged December 2013 assault. Adams Decl. ¶ 17; DOCCS 150. Dr. Adams's examination noted that plaintiff had full facial function, without any defects or asymmetry. Adams Decl. ¶ 17; DOCCS 150. Dr. Adams saw plaintiff again on January 19, 2016, when plaintiff complained that he did not get medical boots. Adams Decl. ¶ 19; DOCCS 137. After observing some thickening of callouses, a cavitary indentation, and a mild buildup of skin on plaintiff's feet, Dr. Adams recommended that plaintiff soak his feet and use a Pumi bar to remove the build-up of skin. Adams Decl. ¶ 19; DOCCS 137.

Thereafter, on April 15, 2016, plaintiff told Dr. Adams that plaintiff's "main issue" was right-sided foot pain and pain in his right elbow. Adams Decl. ¶ 20; DOCCS 131. Upon examination, Dr. Adams did not see any weakness or decrease in range of motion, nor did Dr. Adams note any problems with plaintiff's walking ability. Eleven days later, on April 26, Dr. Adams examined plaintiff to address plaintiff's HIV-related issues; they did not discuss any issues relating to plaintiff's feet or face. Adams Decl. ¶ 22; DOCCS 125.[6]

---

[6] The record also includes several instances in which Dr. Adams prescribed medications, approved vaccines, and authorized medical consults to address plaintiff's other medical conditions, including his HIV-positive status and neuropathy. *See* Adams Decl. ¶¶ 12-13, 15-16, 18, 20, 23; DOCCS at 123, 131, 147, 155, 158, 172, 174. Plaintiff admits to receiving, among other things, his neuropathy and HIV medication. Pl.'s Dep. at 64. Plaintiff also admits to receiving examinations by an infectious disease doctor. Pl.'s at 63-64.

Plaintiff's claims against Dr. Johnson are premised on the lack of response to alleged letters that plaintiff claims he wrote to Dr. Johnson. Compl. ¶ 76; Pl.'s Dep. at 65-66. It is indisputable that Dr. Johnson never personally examined plaintiff. Johnson Decl. ¶ 5; Pl.'s Dep. at 67. Indeed, plaintiff admits that he wrote to Dr. Johnson, but that Dr. Johnson never provided a medical examination of plaintiff. Pl.'s Dep. at 66-67. Dr. Johnson did not personally respond to plaintiff's letters. Compl. ¶ 76; Johnson Decl. ¶ 14.

## ARGUMENT[7]

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77 (2d Cir. 2004). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. If this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. A court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).

---

[7] All unpublished cases cited herein are attached as Appendix A to this memorandum of law.

I.  **PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO HIS CLAIMS AGAINST DR. MILLER**

The PLRA governs federal civil rights litigation by prison inmates by, *inter alia*, It barring a prisoner's federal lawsuit unless he first exhausts available administrative remedies. The PLRA states, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This statute requires administrative exhaustion prior to commencing a federal civil rights action challenging prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (prisoner must exhaust administrative remedies on all constitutional claims prior to bringing suit in federal court). The failure to comply with the mandated administrative exhaustion requirements of the PLRA prior to bringing suit requires dismissal of the complaint. *See Neal v. Goord*, 267 F.3d 116, 117 (2d Cir. 2001). The Second Circuit emphasized that in all cases in which exhaustion is required, it must occur prior to the initiation of litigation. *Id.* at 122.

Even if the administrative grievance process does not permit money damages and the prisoner seeks only money damages, the exhaustion requirement will still apply. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("[A] prisoner must now exhaust administrative remedies even where the relief sought [monetary damages] cannot be granted by the administrative process."). In *Woodford*, the Supreme Court held that the PLRA requires proper exhaustion before a prisoner may proceed in federal court. *Woodford*, 548 U.S. at 93."[T]he PLRA requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so *properly*.'" *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 90) (emphasis in original). Moreover,

8

exhaustion "demands compliance with an agency's deadlines and other critical procedural rules." *Id.* Therefore, "untimely or otherwise procedurally defective attempts to secure administrative remedies" do not satisfy the PLRA's exhaustion requirement. *Id.*

New York State prison inmates have a procedure available to seek administrative redress for their grievances. *See* 7 NYCRR § 701 *et seq.*; *see also Cruz v. Jordan*, 80 F. Supp. 2d 109, 117-18 (S.D.N.Y. 1999) (detailing DOCCS grievance procedures). These regulations are mirrored, with minor refinements, in DOCCS Directive #4040. Seguin Declaration ¶ 4. DOCCS's Inmate Grievance Program affords every inmate "an orderly, fair, simple and expeditious method of resolving grievances." 7 NYCRR § 701.1(a). An inmate may grieve any complaint about the substance or application of any written or unwritten policy, regulation, procedure or rule of the prison system, as well as complaints of employee misconduct "meant to annoy, intimidate or harm an inmate." *Id.* at § 701.2(a-e).

The DOCCS grievance process consists of a three-step grievance and appeal procedure. 7 NYCRR § 701.5. First, an inmate must file a grievance with the IGRC within twenty-one calendar days of the alleged occurrence for an attempt at informal resolution. *Id.* § 701.5(a) and (b). Next, an inmate may appeal an adverse decision to the prison superintendent by completing and signing the appeal section of the IGRC response form and submitting it within seven days of receipt. *Id.* § 701.5(c)(1). The superintendent has twenty calendar days to respond to the appeal. *Id.* § 701.5(c)(3). Finally, an inmate may appeal the superintendent's decision to CORC by appealing the superintendent's decision within seven days of receipt. *Id.* § 701.5(d). CORC is the final appellate level of IGP. Seguin Dec. ¶ 11. Only after pursuing all three levels of review will a claim be considered fully exhausted under the PLRA, entitling a prisoner to seek relief pursuant to § 1983 in federal court. *See Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002).

DOCCS also provides for an expedited procedure for the review of grievances alleging harassment or misconduct by DOCCS employees. *See* 7 N.Y.C.R.R. § 701.8. A grievance that falls under this category will be forwarded to the superintendent directly. *Id.* § 701.8(b). The superintendent will have twenty-five calendar days to render a response. *Id.* § 701.8(f). While the expedited procedure allows for direct forwarding of such a grievance to the Superintendent, the prisoner must still initiate the grievance process by filing a grievance in accordance with § 701.5(a). *Id.* § 701.8(a). If an inmate fails to receive a response from the Superintendent within the specified time, the failure to respond may be construed as a denial, and the prisoner must still appeal to CORC in order to exhaust his administrative remedies. *Id.* § 701.8(g). Finally, while the expedited procedure allows for direct forwarding of such a grievance to the superintendent of the facility, a prisoner must still appeal a negative determination to CORC in order to exhaust his administrative remedies before filing suit. *Id.* §§ 701.8(h)-(i).

Although plaintiff is familiar with DOCC's grievance process (Pl.'s Dep. at 14-15), he failed to avail himself of this process with respect to his claim against Dr. Miller. While at Coxsackie C.F., plaintiff filed only one grievance that was appealed to CORC, but that grievance was unrelated to any alleged conduct by Dr. Miller. Seguin Decl. ¶¶ 18-19 and Ex. B. CORC rendered a final determination on Grievance No. CX-18013-14 ("Assault'), which makes a claim of assault by security staff, on May 21, 2014. Seguin Decl. ¶ 20 and Ex. C. CORC rendered a final determination on that grievance on May 21, 2014. Seguin Decl. ¶ 20 and Ex. C. The grievance, however, does not contain any claim that Dr. Miller was indifferent to plaintiff's medical needs. Seguin Decl. ¶ 21 and Ex. C. Plaintiff failed to exhaust his claims against Dr. Miller. For this reason alone, Dr. Miller is entitled to summary judgment.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIMS

To state a claim of medical deliberate indifference under the Eight Amendment, a "plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 105-06 (1976)). "The deliberate indifference standard for denial of medical care requires demonstration of: (1) a sufficiently serious deprivation, and (2) deliberate indifference with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks omitted). A successful claim for deliberate indifference requires the plaintiff to show both an objective and subjective component.

"The objective component of an Eighth Amendment deliberate indifference claim requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553) (internal quotation marks omitted). Determining whether a deprivation is sufficiently serious involves two inquiries. First, the court will look at whether the plaintiff was actually deprived of adequate medical care. *Hill*, 657 F.3d at 122. Prison officials who act "reasonably" in response to the inmate's health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer v Brennan*, 511 U.S. 825, 844-47 (1994)). Second, if the complaint alleges that no medical treatment was provided, the court will look at whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court will examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)).

11

In cases where the alleged inadequacy is in the medical treatment that was afforded to the inmate, the inquiry is narrower. If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). "'Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a "life-threatening and fast-degenerating" condition for three days, or delayed major surgery for over two years.'" *Culp v. Koenigsmann*, No. 99 CIV. 9557, 2000 WL 995495, at *7 (S.D.N.Y. July 19, 2000) (quoting *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999)).

For the subjective component of a medical deliberate indifference claim, the court will examine whether or not the official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 835. The court will review whether the purported action or non-action "involved culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). Deliberate indifference requires "something more than mere negligence… [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. To establish the subjective component of a medical deliberate indifference claim, the inmate must prove that: (1) a prison medical care provider was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; and, (2) that the medical provider actually drew that inference. *Id.* at 837. The inmate must establish that the defendant consciously and intentionally disregarded or ignored that serious medical need. *Id.* "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment is adequate, the fact that a prisoner might prefer a

different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

      a.      **Dr. Miller's Examination Of Plaintiff On January 13, 2014 Did Not Reveal Any Medical Problems**

The record reveals that on January 13, 2014, Dr. Miller provided the appropriate medical examination in light of the circumstances. Because the request for a medical examination was made by the plaintiff's family members, rather than through the normal SHU policy in which plaintiff requests it from a nurse, Dr. Miller could not obtain the necessary security staff to examine plaintiff in his cell. Miller Decl. ¶¶ 9-10; DOCCS 260. Dr. Miller, however, could see plaintiff's entire face and body, and was able to touch plaintiff's face, jaw, and ribs. Miller Decl. ¶ 11; DOCCS 260. Dr. Miller's examination revealed that plaintiff did not have any abnormal conditions. Miller Decl. ¶ 11; DOCS 260. Accordingly, even if plaintiff had exhausted his claim against Dr. Miller, Dr. Miller would still be entitled to summary judgment because Dr. Miller was not deliberately indifferent to any medical need of plaintiff, let alone a serious medical need.[8]

---

[8] In any event, a mere claim of inadequate medical examination is insufficient to withstand summary judgment. See *Burgess v. Garvin*, No. 01 CIV.10994 GEL, 2003 WL 21983006, at *4 (S.D.N.Y. Aug. 19, 2003) (""With respect to the subjective element, neither the claim that [defendant] performed an inadequate examination, nor the fact that he disagreed with [plaintiff] … creates a factual issue as to whether [defendant] was indifferent. Even if some aspect of [defendant's] treatment constituted malpractice (and there is no evidence of that), more would be required for a fact-finder to find deliberate indifference….").

**b.    Dr. Johnson Was Not Personally Involved In Any Alleged Eighth Amendment Violations As She Was Not Personally Involved In Plaintiff's Medical Care**

"[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Such liability must be viewed in light of the standards in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995).[9]

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring

*Colon*, 58 F.3d at 873. Even under *Colon*, however, the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement. *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006). Moreover, the "general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).

Plaintiff cannot show the personal involvement of Dr. Johnson because the claims against Dr. Johnson arise solely from plaintiff's alleged letters to Dr. Johnson. Under the foregoing authority, even if Dr. Johnson ignored plaintiff's letters, Dr. Johnson's actions are insufficient to constitute personal involvement for the purposes of § 1983. For this reason alone, Dr. Johnson is entitled to summary judgment.

---

[9] The Second Circuit "[a]ssum[es] arguendo that *Colon* … still identifies the standards for establishing § 1983 liability of a supervisory defendant." *Doe v Whidden*, 557 Fed. App'x 71, 72 (2d Cir. 2014).

### c. Dr. Adams Provided Plaintiff With Appropriate Medical Care

Initially, between September 2014 and September 2016, Dr. Adams interacted with plaintiff multiple times to address plaintiff's myriad medical needs. Even when Dr. Adams did not see plaintiff personally, Dr. Adams authorized medications, vaccines, and consultations for plaintiff. *See generally* Adams Decl.; DOCCS at 123, 131, 137, 147, 150, 155, 158, 170, 172, 174, and 184.[10] "These repeated interactions and provisions of medications belie claims of indifference or delay." *Murray v. Ramineni*, No. 08-CV-809, 2011 WL 1315777, at *20 (N.D.N.Y. Mar. 3, 2011) (citing cases).[11]

As to plaintiff's foot issues, calluses are not sufficiently serious to satisfy the objective proving of the deliberate indifference standards. *See Simmons v. Cripps*, No. 12 CIV. 1061 PAC DF, 2013 WL 1290268, at *16 (S.D.N.Y. Feb. 15, 2013) (*"*[P]inched nerves, sores, calluses, bleeding heels, and back and leg problems, do not 'offend contemporary standards of decency,' or 'pose an unreasonable risk of serious damage to [plaintiff's] future health.") (citations omitted);[12] *Swindell v. Supple*, No. 02CIV.3182RWS, 2005 WL 267725, at *7 (S.D.N.Y. Feb. 3, 2005) ("While fully crediting [plaintiff's] assertions that his skin condition and calluses caused him pain … pain when walking around the entire facility, his medical conditions are not of such an urgent and substantially painful nature as would satisfy the objective prong of the deliberate indifference standard.").

---

[10] It should also be noted that plaintiff received treatment for myriad issues from multiple providers throughout his incarceration at Clinton C.F., belying any claim that he did not receive appropriate medical care at that facility. *See* DOCCS at 112-91.

[11] *Report and recommendation adopted*, 2011 WL 1257123 (N.D.N.Y. Apr. 1, 2011).

[12] *Report and recommendation adopted*, 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013).

Even if the calluses were sufficiently serious, Dr. Adams provided appropriate medical care for that issue. On April 8, 2015, Dr. Adams personally cut away and shaved off plaintiff's calluses. Adams Decl. ¶ 14; DOCCS at 170. Dr. Adams did not see a need for special issue or medical boots. Adams Decl. ¶ 14; DOCCS at 170. After plaintiff complained to Dr. Adams in January 2016, Dr. Adams instructed plaintiff on proper care and recommended ways to remove the excess skin. Adams Decl. ¶ 19; DOCCS 137. As to plaintiff's alleged facial issues, Dr. Adams examined plaintiff's face on October 31, 2014, but did not find any gross asymmetry. Adams Decl. ¶ 11; DOCCS 184. Moreover, even though plaintiff did not complain of pain or disability during this examination, Dr. Adams provided pain medication as a precaution. Adams Decl. ¶ 11; DOCCS 184.[13] Although plaintiff complained of facial pain during an examination on September 30, 2015, Dr. Adams noted that plaintiff had "full facial function, without any defects evident on palpitation and no asymmetry of the face." Adams Decl. ¶ 17; DOCCS at 150. Dr. Adams then suggested a Telemed. Adams Decl. ¶ 17; DOCCS at 150. Plaintiff's personal belief that he should have received different treatment for his face and foot issues is insufficient to satisfy the subjective prong of the deliberate indifference analysis.

---

[13] To the extent that plaintiff merely wants cosmetic surgery, the Constitution does not afford such a right. *See Chance*, 143 F.3d at 702 ("A prisoner who nicks himself shaving obviously does not have a constitutional right to cosmetic surgery.")

## III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity shields government officials from liability for civil damages where their performance of their discretionary duties does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (citation omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, defendants actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. There was no reason for defendants to believe that their actions in the performance of their duties would violate plaintiff's clearly established constitutional rights. Johnson Decl. ¶ 15; Adams Decl. ¶ 27; Miller Decl. ¶ 19.

## **CONCLUSION**

For the reasons set forth herein, this Court should grant this motion for partial summary judgment, dismiss the claims against Defendants Miller, Adams, and Johnson, and grant such further and other relief as the Court deems just and necessary.

Dated: Albany, New York
       June 1, 2018

                                    BARBARA D. UNDERWOOD
                                    Attorney General of the State of New York
                                    Attorney for Defendants
                                    The Capitol
                                    Albany, New York 12224

                         By:   */s/ Louis Jim*
                                    Louis Jim
                                    Assistant Attorney General, Of Counsel
                                    Bar Roll No. 517401
                                    Tel.: (518) 776-2574
                                    louis.jim@ag.ny.gov

TO:  Bobby Grubbs
       DIN 09-A-5025
       Plaintiff Pro Se
       Green Haven Correctional Facility
       P.O. Box 4000
       Stormville, New Yo.rk 12582