**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BOBBY GRUBBS,

                            Plaintiff,

                                                            9:16-CV-1476
            v.                                               (TJM/DJS)

STEVEN GRIMALDI, *et al.*,

                            Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

BOBBY GRUBBS
Plaintiff, *Pro Se*
09-A-5025
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 1258

HON. LETITIA JAMES                          CHRISTOPHER LIBERATI-
Attorney General of the State of New York   CONANT, ESQ.
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

**I.  INTRODUCTION**

Plaintiff commenced this civil rights action *pro se* in December 2016.  Dkt. No. 1,

Compl.  Upon review of the Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the

District Court dismissed a number of Plaintiff's claims, and permitted the following claims

to proceed:  Eighth Amendment excessive force claims against Defendants Grimaldi, Pavlin, Hoffstetter, Jablanski, and Woods;  Eighth Amendment failure to intervene claims against Defendants Pavlin and Looman;  and Eighth Amendment medical indifference claims against Defendants Miller, Adams, and Johnson.  Dkt. No. 4.  Plaintiff's Motion to Amend his Complaint was granted in part and denied in part on January 26, 2018.  Dkt. Nos. 26, 28, & 29.  The Proposed Amended Complaint was substantively the same as his original Complaint except that it also pled a new claim for discrimination based on sexual orientation against Defendant Pavlin, and contained new allegations regarding his excessive force claims; the Court permitted the Amended Complaint only as to Plaintiff's claims that had previously been permitted to go forward by the initial review.  Dkt. Nos. 26 & 28.

Presently before the Court is the Motion for Summary Judgment on Plaintiff's claims against Defendants Adams, Johnson, and Miller.  Dkt. No. 37.  Plaintiff has filed an opposition to the Motion.  Dkt. No. 45.

## A.  Summary of the Relevant Facts

In his Amended Complaint, Plaintiff alleges that on December 17, 2013 he was assaulted by a number of corrections officers at Coxsackie Correctional Facility.  Dkt. No. 29, Am. Compl., ¶¶ 1-29.[1]  Plaintiff alleges that, following the assault, the moving Defendants failed to provide him proper medical care at Coxsackie and Clinton Correctional Facilities.  Dkt. No. 37-2, Defs.' Statement of Material Facts ("SMF"), ¶ 2; Dkt. No. 45, Pl.'s

---

[1]  In order to provide context, the Court cites to the Amended Complaint for alleged facts that are not detailed in the parties' Statements of Material Facts.

SMF, ¶ 2.   After Plaintiff allegedly was assaulted, Defendant Miller treated him at Coxsackie, examining his face through his cell door, which Plaintiff contends was an insufficient exam and medical treatment.  *Id.* at ¶¶ 18 & 20.

Plaintiff left Coxsackie on February 3, 2012, and entered Clinton in September 2014. *Id.* at ¶¶ 22 & 23.  At Clinton, Plaintiff sought care for an alleged facial fracture stemming from the assault, foot pain from corns and callouses, and neuropathy.[2]  *Id.* at ¶ 24.  Dr. Adams treated Plaintiff at Clinton on various occasions, examining Plaintiff's face and feet. *Id.* at ¶¶ 25, 34, 36, 38, & 40.  Plaintiff and Defendants dispute what actions were taken to treat Plaintiff's face.  *Id.* at ¶¶ 26-30.  In response to Plaintiff's complaints about callouses, Defendant Adams cut away callouses.  *Id.* at ¶¶ 31-32.  Plaintiff complained about face pain and foot pain and asked for boots; Defendant Adams did not see a need for special issue or medical boots.  *Id.* at ¶¶ 33, 34, 36, 37, & 39.  Plaintiff alleges that Defendant Adams provided inadequate treatment for his feet and face.  Am. Compl. at  ¶¶ 72-77.  Plaintiff also alleges he wrote to Dr. Johnson, a supervising doctor at Clinton, in order to get care and did

[2] Plaintiff alleges in his Statement of Material Facts and throughout his opposition that Dr. Adams "arbitrarily stopped [his] existing pain medication for nerve damage indefin[i]tely."  Pl.'s SMF at ¶ 24.  Plaintiff did not make any such allegations in his Amended Complaint.  Rather, his brief allegations regarding treatment for neuropathy pain appear to be related to his time at Great Meadow Correctional Facility.  Am. Compl. at ¶¶ 50 & 62.

Discovery in this matter closed months before Defendants' Motion was filed. Dkt. No. 25 (extending discovery deadline to February 2, 2018).  The Court therefore finds it would be inappropriate to consider such new allegations, as "permitting Plaintiff to so change the landscape of his claims at this late stage of the action would be to deprive Defendants of the fair notice envisioned by Fed. R. Civ. P. 8." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 219-20 (N.D.N.Y. 2008); *Snyder v. Town of Potsdam*, 2018 WL 6267922, at *19 (N.D.N.Y. Nov. 30, 2018) ("Although a *pro se* litigant is generally permitted to effectively amend the allegations of his complaint through the assertion of new allegations in his opposition to a motion to dismiss for failure to state a claim (to the extent those new allegations are consistent with the allegation of his complaint), here, the Court finds that letting Plaintiff do so through his opposition to Defendant's motion for summary judgment would unfairly and inefficiently change the landscape of his claims after discovery has been completed.").

not receive a response.  Defs.' SMF at ¶¶ 41-44; Pl.'s SMF at ¶¶ 41-44.  Plaintiff alleges that

Defendant Johnson purposefully ignored his letters and was thus deliberately indifferent to

him.  Pl.'s SMF at ¶¶ 42-44; Am. Compl. at ¶ 76.

## II.  DISCUSSION

### A.  Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate

only where "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  The moving party bears the burden to demonstrate through

"pleadings, depositions, answers to interrogatories, and admissions on file, together with

[ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*,

34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts

showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials

of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344

F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient

to defeat a motion for summary judgment when the moving party has set out a documentary

case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that

end, sworn statements are "more than mere conclusory allegations subject to disregard . . .

they are specific and detailed allegations of fact, made under penalty of perjury, and should

be treated as evidence in deciding a summary judgment motion" and the credibility of such

statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty*

*v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.  Plaintiff's Exhaustion of Administrative Remedies

Defendants first contend that Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendant Miller.  Dkt. No. 37-13, Defs.' Mem. of Law, pp. 8-10.

### 1.  Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).   Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).   Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).   The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[3]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP").   First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b).   An inmate must submit a grievance "within 21

---

[3] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).   Defendants properly raised the affirmative defense in their Answer to the Amended Complaint. Dkt. No. 31 at ¶ 99.

calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Defendants contend that Plaintiff failed to exhaust his claims as against Defendant Miller.[4]

### 2. *Whether Plaintiff Failed to Exhaust*

At the time of the events relevant to Plaintiff's claims against Defendant Miller, Coxsackie had a grievance program to which inmates had full access. Dkt. No. 37-6, Seguin Decl. at ¶¶ 4-12; Dkt. No. 37-7, Seguin Decl. Ex. A.

Although Plaintiff asserts that he exhausted grievances regarding each Defendant, and

---

[4] Defendants' Statement of Material Facts contains a section entitled "Plaintiff Did Not Appeal Any Grievance Relating To His Claims Against Johnson To The Central Office Review Committee." Defs.' SMF at p. 1. However, the section only mentions Defendant Miller, as does the Memorandum of Law and the Declaration of Rachel Seguin; as such, it appears that Defendants' Motion is only intended to make such a contention regarding Defendant Miller.

submitted documentation in his Opposition that he contends demonstrates that he exhausted his remedies against Defendant Miller, none of the grievances he or Defendants submitted evidences a grievance regarding Defendant Miller. Dkt. No. 37-4, Pl.'s Dep., p. 16; Dkt. No. 45-1, Exs. to Pl.'s Opp. Plaintiff exhausted one grievance that has to do with his medical complaints, UST-54032-14. Exs. to Pl.'s Opp. at pp. 51-63.[5] Although this grievance does not name Defendant Miller or explicitly discuss Defendant Miller's actions or inactions, and was filed at Upstate Correctional Facility, the issues described in this grievance could plausibly be interpreted as including his concerns regarding Defendant Miller. The grievance is dated May 13, 2014, however, four months after Defendant Miller's allegedly insufficient exam and over three months after Plaintiff was transferred out of Coxsackie, where he was treated by Defendant Miller. Am. Compl. at ¶¶ 33 & 35; Exs. to Pl.'s Opp. at p. 51. As such, Plaintiff did not file the grievance within twenty-one days of an occurrence involving Defendant Miller, and if Plaintiff did intend for the grievance to apply to Defendant Miller, the grievance would not be timely as to him. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a).

Plaintiff also submits a letter he had written to Carl J. Koenigsmann, M.D., the Chief Medical Officer, in which he complained of his treatment by Defendant Miller; this, however, does not constitute a grievance. Exs. to Pl.'s Opp. at pp. 3-4. To the extent Plaintiff contends that this letter satisfies the exhaustion requirement, complaints that do not

---

[5] Because Plaintiff's submissions are often not sequentially paginated, citations to his submissions that do not contain numbered paragraphs are to the pagination automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

comply with all of the grievance requirements are insufficient to constitute "proper exhaustion." *See Davis v. Doe*, 2017 WL 8640829, at 3 (N.D.N.Y. Dec. 29, 2017); *see also Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion[.]'") (internal citation and quotation marks omitted)). "Regardless of whether . . . informal complaints put the prison officials on notice of his grievance '*in a substantive sense*,' . . . to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies." *Macias v. Zenk*, 495 F.3d at 43.   Plaintiff does not allege that his letter was submitted to the IGRC or otherwise complied with the exhaustion requirements.

As such, Plaintiff did not exhaust his administrative remedies as to Defendant Miller.

### 3. Whether Plaintiff's Failure to Exhaust was Excusable

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.*  The Supreme Court provided three potential circumstances in which administrative remedies may be unavailable:  (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The only allegation that Plaintiff invokes to excuse the failure to exhaust is that one of his grievances, UST-53853-14, disappeared after he mailed it to CORC. Pl.'s SMF at ¶ 10. This grievance, "Photos Taken 1 Day After Assault," is about the time line in which DOCCS takes photos of injured inmates, and its effect on evidence gathering; it does not have to do with the medical care Plaintiff received or was refused. Exs. To Pl.'s Opp. at pp. 1-2 & 12-15. As such, the alleged disappearance of this grievance does not excuse Plaintiff's failure to exhaust his claims against Defendant Miller. Plaintiff does not otherwise contend that administrative remedies were unavailable to him.

The Court therefore finds that Plaintiff failed to exhaust his claims against Defendant Miller, and recommends that Plaintiff's claim against Defendant Miller be dismissed.

## C. Plaintiff's Deliberate Indifference Claims Against Defendants Johnson and Adams

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or

interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong of the Eighth Amendment analysis in the context of a post-conviction detainee is a subjective standard requiring the plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin* ("*Hathaway II*"), 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 1. *Defendant Johnson*

Defendants contend that Defendant Johnson is entitled to summary judgment because Plaintiff does not allege that she was personally involved in the events of the Amended Complaint. Defs.' Mem. of Law at p. 14. Defendants contend that Plaintiff's allegations

that he wrote letters to Defendant Johnson that went unanswered do not sufficiently show personal involvement for purposes of Section 1983. *Id.* Specifically, Defendant Johnson states that, as Facility Health Services Director, she does not personally attend to all patients; she has never personally examined Plaintiff's facial injuries or feet, and did not supervise or have any knowledge of the daily care provided regarding his medical concerns. Dkt. No. 37-11, Johnson Decl., ¶¶ 4-6. She states that she does not recall receiving letters from Plaintiff, and that it is not her practice to routinely respond to inmate correspondence, and she does not recall responding to any correspondence from Plaintiff. *Id.* at ¶¶ 12-14. In response, Plaintiff alleges that he wrote multiple letters to Defendant Johnson, and that by ignoring them, she displayed deliberate indifference. Dkt. No. 45, Pl.'s Mem. of Law, p. 6.

It appears that Plaintiff bases his claims against Defendant Johnson on the supervisory role she allegedly held. *See* Am. Compl. at ¶ 76 ("Dr. Johnson is the head doctor at Clinton C.F. I've written to her repeatedly about the medical problems of my face and about my feet pain. . . . She has never responded by writing or otherwise, ever."); Pl.'s Dep. at p. 65 ("The claim against Dr. Johnson is that instead of Dr. Adams, because of the fact that Dr. Adams is not doing anything as far as my feet and my face and my gastrointestinal issues, I'm going to his supervisor. . . . Dr. Johnson is Dr. Adams' supervisor.").

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official "may not be held liable for damages merely because he held a high

position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

The Second Circuit has held that the personal involvement of a supervisory official may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873 (citations omitted). Here, even if all the *Colon* factors continue to exist after the Supreme Court decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), summary judgment on this claim is appropriate: none of the factors set forth in *Colon* provide a basis on which to hold Defendant Johnson liable. Plaintiff does not plausibly allege that Defendant Johnson participated directly in the violation, that she created a policy

or custom under which unconstitutional practices occurred, or that she was grossly negligent in supervising subordinates who committed the wrongful acts or omissions. Rather, the only bases under *Colon* that Plaintiff plausibly alleges could be that Defendant Johnson, after being informed of the violation through a report or appeal, failed to remedy the wrong, or exhibited deliberate indifference by failing to act on information indicating unconstitutional acts were occurring.

"[T]he receipt of letters or grievances, by itself, does not amount to personal involvement." *Sharma v. D'Silva*, 157 F. Supp. 3d 293, 306 (S.D.N.Y. 2016) (quotation marks and citation omitted) ("Plaintiff [ ] appears to argue that Defendant[s] were, by virtue of their positions as Facility Health Services Directors, responsible for ensuring that a prosthodontist examined Plaintiff. However, an individual defendant's supervisory role does not automatically translate into that defendant's personal involvement."); *Ahlers v. Kaskiw*, 2014 WL 4184752, at *10 n. 16 (N.D.N.Y. Aug. 21, 2014) ("Plaintiff alleged that Dr. Kaskiw ignored two letters that plaintiff wrote requesting treatment with Lidex cream. It is well-settled that the failure of a supervisory official to respond to a letter of complaint written by an inmate is not sufficient to show personal involvement."); *Fredricks v. City of New York*, 2014 WL 3875181, at *11 (S.D.N.Y. July 23, 2014). Because Plaintiff only alleges that Defendant Johnson ignored his letters, he has not demonstrated that Defendant Johnson was personally involved in the alleged constitutional violations, and the Court recommends

that Plaintiff's claims against her be dismissed.[6]

### 2. *Defendant Adams*

Finally, Defendants contend that Defendant Adams did not violate Plaintiff's constitutional rights because he provided Plaintiff with appropriate medical care. Defs.' Mem. of Law at pp. 15-16. They assert that he met with Plaintiff multiple times regarding his medical needs, and authorized various medications and consultations. *Id.* Defendants further contend that Plaintiff's foot calluses are not sufficiently serious to satisfy the objective prong of deliberate indifference, and even if they were, Defendant Adams treated Plaintiff's foot problems appropriately. *Id.* Defendants likewise contend that Dr. Adams treated Plaintiff's complaints regarding his face appropriately, and that Plaintiff's belief that he should have received different treatment is insufficient to satisfy the subjective prong of a deliberate indifference claim. *Id.*

### a. *Plaintiff's Facial Fracture*

As to Plaintiff's claims regarding his face, Defendants do not dispute that Plaintiff's facial fracture is a sufficiently serious injury. *See* Defs.' Mem. of Law. As to the subjective prong, however, Defendants contend that Dr. Adams treated Plaintiff, and that his belief that he should have received different treatment is insufficient to satisfy the subjective prong of deliberate indifference. *Id.* at p. 16.

In his Amended Complaint and Opposition, Plaintiff alleges that his not receiving

---

[6] The Court, in finding that Defendant Johnson is not liable on a theory of supervisory liability, does not reach the issue of whether Defendant Johnson is entitled to qualified immunity as raised by Defendants. Defs.' Mem. of Law at p. 17.

corrective surgery to his face constitutes deliberate indifference.  *See* Am. Compl. at ¶ 72 ("While housed at Clinton Correctional Facility I have made an exorbitant effort to obtain medical shoes and to receive corrective surgery to the fracture in my face."); Pl.'s Mem. of Law at p. 7 ("Dr. Adams repeatedly threw me out of his exam room when I brought up the need for a surgical consult"); *see also* Exs. to Pl.'s Opp. (letters and grievances regarding Plaintiff's desire for facial surgery).  He also complains about pain and disability resulting from his fracture; such complaints are reflected in the letters Plaintiff attaches to his opposition, though he does not explicitly invoke lack of treatment for his pain as a basis for his deliberate indifference claim.  *See*, *e.g.*, Exs. to Pl.'s Opp. at pp. 29-30.

Plaintiff alleges that he frequently contacted Dr. Adams regarding the pain and disability resulting from his facial fracture, and that Defendant Adams failed to document or act upon Plaintiff's concerns.  Pl.'s SMF at ¶ 24.  However, Defendant Adams asserts and the medical records reflect that he frequently saw Plaintiff, and provided him with adequate treatment for his face.

Defendant Adams outlines in his Declaration his treatment of Plaintiff's face.  Dkt. No. 37-12, Adams Decl.  Defendant Adams asserts generally that he "met with [Plaintiff] regularly, monitored his medical concerns, prescribed appropriate medications, and requested outside consultations as needed."  *Id.* at ¶ 7.  On October 31, 2014, Dr. Adams examined Plaintiff's face and did not find any gross asymmetry and Plaintiff made no complaint of pain or disability; Defendant Adams saw no need for a referral to a specialist, and provided Plaintiff pain medication for any pain he may experience.  *Id.* at ¶ 11.  On April 8, 2015,

Plaintiff requested a referral to an otolaryngology surgeon and complained of numbness of face; Defendant Adams noted that he had been denied such a referral in the past and recommended that he wait for the result of a pending grievance regarding the denial. *Id.* at ¶ 14. Plaintiff requested facial reconstruction at that appointment. *Id.* On September 30, 2015, Plaintiff complained to Defendant Adams about pain and numbness to his face. *Id.* at ¶ 17. Defendant Adams noted "full facial function, without any defects evident on palpitation and no asymmetry of the face. [His] assessment was that he had an old zygomatic fracture and [he] suggested a Telemed request for an otolaryngologist's opinion." *Id.* at ¶ 17. In addition, Plaintiff's medical records reveal that Plaintiff received pain medication with some regularity while at Clinton. *See, e.g.*, Dkt. No. 38 at pp. 40 (prescribing "Ibp" on October 9, 2015); 41 (prescribing Tylenol on July 31, 2015); 42 (prescribing Tylenol on September 10, 2015); 43 (prescribing Ibuprofen on August 24, 2015); 47 (prescribing Tylenol on July 16, 2015); 65 (prescribing Tylenol on February 12, 2015); 70 prescribing "IBP" on December 12, 2014); 73 (prescribing Tylenol on October 17, 2014); 74 prescribing Meloxicam on October 31, 2014); 79 (prescribing "Ibp" on October 7, 2014); 80 (prescribing Tylenol on September 29, 2014).

As for Plaintiff's opposition, the letters of complaint he attaches reflect frequent consultations. Plaintiff complains that on October 31, 2015, Defendant Adams referred him to an ear, nose, and throat specialist, rather than a reconstructive surgeon; he complains that this referral was denied and that no further efforts were made to refer him to an appropriate medical professional. Exs. to Pl.'s Opp. at pp. 20-22 ("If otolaryngology is ear, nose, and

throat, then Dr. Adams has referred me to the wrong specialist."). Plaintiff includes letters to other DOCCS staff that contain complaints about his treatment by Defendant Adams, describing his face pain and numbness and difficulty performing daily activities involving his face, and contending that he is being ignored, or at least not being properly treated. *Id.* at pp. 7-8, 16-23, 26-29, 31-33, 39, & 73-74. The same letters of complaint, however, often reflect the treatment Dr. Adams was providing. *Id.* at pp. 7-8, 20-21, & 73-74.

Plaintiff's claim regarding his face essentially amounts to a claim that Dr. Adams should have provided Plaintiff with facial reconstruction surgery. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d at 703. "Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010) (citing *Sonds v. St. Baranabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)). To the extent that Plaintiff contends Defendant Adams did not utilize the most efficacious treatment option for his face, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106.

Here, Defendant Adams examined Plaintiff's face, saw Plaintiff regularly, provided Plaintiff with pain medication, and referred Plaintiff to see an otolaryngologist. Having received that evaluation and treatment, Plaintiff's complaints amount to a disagreement with the treatment provided to him. *See*, *e.g.*, *Hawthorne v. Nurse Sturgeon*, 2018 WL 4290458,

at *3 (N.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4288624 (N.D.N.Y. Sept. 7, 2018) (finding, where plaintiff sought corrective surgery for severe pain and loss of function in hand, "[defendant's] course of action in providing plaintiff with Motrin fails to demonstrate culpable recklessness, as it establishes that she responded to plaintiff's alleged complaints of pain by providing pain medication."). Defendant Adams' evaluation and treatment of Plaintiff does not rise to the level of deliberate indifference because he did not assist Plaintiff in obtaining facial reconstruction surgery.

### b. *Plaintiff's Foot Conditions*

As for Plaintiff's allegations regarding his feet and boots, Plaintiff has not alleged a sufficiently serious injury to satisfy the objective prong of a deliberate indifference claim. *Chatin v. Artuz*, 28 Fed. Appx. 9, 10-11 (2d Cir. 2001) (summary order) ("[Plaintiff]'s condition, which medical staff at various stages of his treatment diagnosed as a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires."); *Brown v. DeFrank*, 2006 WL 3313821, at *21 (S.D.N.Y. Nov. 15, 2006) (collecting cases holding that "foot problems do not establish the objective prong of the deliberate indifference standard"); *see also Williams v. Perlman*, 2009 WL 1652193, at *6-7 (N.D.N.Y. Feb. 5, 2009), *report and recommendation adopted in relevant part*, 2009 WL 1652188 (N.D.N.Y. June 10, 2009).

Plaintiff's claim against Defendant Adams regarding his foot pain fails to satisfy the subjective prong as well. Defendant Adams saw Plaintiff regarding his foot pain issues and treated him for them. Adams Decl. at ¶¶ 14, 19, & 21. Defendant Adams states that he cut

away Plaintiff's calluses, that when Plaintiff was having foot pain Defendant Adams did not observe any weakness or decrease in range of motion or note that he had any problem walking, and that he saw no need for medical boots. *Id.* Plaintiff's claim regarding his feet thus amounts to a disagreement with Defendant Adams' medical judgment, which does not amount to deliberate indifference. As discussed above, that disagreement does not create a constitutional claim. *Chance v. Armstrong*, 143 F.3d at 703; *Estelle v. Gamble*, 429 U.S. at 106. Therefore, such allegations are insufficient to support this claim.

### c. Qualified Immunity

Defendant Adams contends that he is entitled to qualified immunity. Defs.' Mem. of Law at p. 17. The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999).

It was objectively reasonable for Defendant Adams to believe that his regular treatment of Plaintiff with examinations, pain medications, and a referral did not violate Plaintiff's clearly established constitutional rights. *See*, *e.g.*, *Verbitsky v. Montalbano*, 2012 WL 371994, at *7 (E.D.N.Y. Feb. 1, 2012). Therefore, should the District Court find that

Defendant Adams is not entitled to summary judgment on the basis detailed above, the Court recommends finding that Defendant Adams is entitled to qualified immunity.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion (Dkt. No. 37) be **GRANTED**; and it is further

**RECOMMENDED**, that Defendants Miller, Johnson, and Adams be **DISMISSED** from this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[7] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:    January 23, 2019
        Albany, NY

                                  Daniel J. Stewart
                                  U.S. Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).